Secretary of U.S. Department of Homeland Security Ms. Hassan for the appellant, Mr. Shulong for the appellee Good morning, Your Honor. Nabi Hassan for the appellant, Edna Doak May it please the Court, this case is predicated upon this Court's recent decision in Solomon v. Salek which overturns the District Court's ruling below, which held as a matter of law that a maxi-flux schedule was unreasonable. This Court's recent decision in Solomon overturns that verdict. Its predecessor is what the Court below relied in its entirety in dismissing my client's case on summary judgment holding as a matter of law her request for accommodations for a maxi-flux schedule were unreasonable. Is that the only? I took it that there were two grounds for the summary judgment. One, the ground that you're now talking about, which is whether or not a flexible plan was permissible or not. But the second was whether she could do the work even with a flexible plan. Your Honor, that is precisely the issue here. That is a contested issue of fact. Her testimony averts that her job duties could be performed with a maxi-flux schedule. It was not a question of her job duties. It was a question of her ability in light of her disability. That is, whether she was an otherwise qualified individual with a disability because even with the accommodation she was AWOL, she was late, she was absent. And to be honest, I don't see anything in your brief that even addresses that question. I do see you make the argument that, with respect to Solomon and otherwise, that a flexible plan is a permissible accommodation, and I think you're obviously right about that. But the second decision of the court in which she lays out extensively the evidence of how many days she didn't show up for work at all or showed up only a part of a day or a half of a day. Your Honor, if you look at her performance review, she was meeting all expectations even without the accommodation. Where is that performance review? One second. If I have a moment to cite to the record. Go ahead, please. I believe 116. That's a performance review for which period? This is for, this review is dated May 12th, 2010. And the appraisal period is from April 1st, 2009 to March 31st. And this most recent review is dated May 12th, 2010. Could you give me that page? Sure, 116. The part of the district court's opinion that I'm focusing on, which starts at J395, is all about what happened after April, from April 2010 on. Does she have a performance review for that period? Your Honor, I don't believe that she had the opportunity to be appraised, but her performance, her attendance was improving. She was able to meet the requirements of her position. Her attendance wasn't improving. I mean, you said there was two weeks where it went up, but then it went down again after that, right? Overall, Your Honor, it was improving. Where's your evidence for an overall improvement? I thought it was down, down, down. She had a two-week period where it seemed to go up a little bit, got to 85%, which is the week you cite, and then it went down again after that. Am I wrong factually?  That's correct, Your Honor. That doesn't sound like improving. Overall, based on what it was, it has significantly improved. And what she was seeking, Your Honor, was just a flexibility here, and the attendance issue spurred from the lack of accommodation. She was looking to come in progressively earlier. She wanted to work towards 9 a.m. start time. So she initially requested to begin work from 11 a.m. This was denied. She requested, can I come at 10? This was denied. And she wanted to work towards a 9 a.m. schedule while the medications, the effects of her medication, which she was taking, would wear off. This was denied. But didn't she have the separate issue that even if she'd been able to come in at 11, she could get a disabling migraine and not be able to work that day at all? She also requested, Your Honor, to be able to make up the work during the weekend hours. And she was fit to return to work with an accommodation. This is what her physician said. The documentation that she provided to her physician. What did her physician say? She could do this job with an accommodation? Yes. Addressing, I didn't think the physician had addressed the consequences of the migraines. Your Honor, their independent review said that, who did not examine my client felt that she could not perform it. But her physician and my client believes that had she been given this accommodation, she could meet the requirements of her position. The accommodation was then that the work would be done on weekends? That was one of the accommodations she was seeking. And what evidence did you have that the job did not require her to do the work at a time when she could interact with other employees? Your Honor, the sole thing is her testimony maintains that she was not required to travel off-site in more than a year, that the basic functions of her position could be performed via telecommuting. What detail did she give that she didn't have to be there to interact with other employees? The core responsibilities, preparing budgets, proposals, could be done. And Appellee hasn't cited any documentary evidence. They're citing two testimonial evidence, which, again, is a privy of the jury to evaluate. And if there are credibility issues here, this is precisely why summary judgment was inappropriate. Didn't the Appellee, though, cite to, I can't remember the name of the document, but basically said that even employees under flexible schedules need to be in the office between, I think it's the hours of 9 and 10.30 and 1 and 2.30 or something? That was one offhand recurrence for one training, Your Honor. But the bulk of her responsibilities, this is a short-term accommodation. This is not, you know, indefinite. This is a short-term accommodation while her medication, while she adjusted to her medication, which was denied. It wasn't as if she was seeking this long-term intermediary accommodation. And this was an employee who had been with the government for several years, and to be denied this accommodation, which resulted in the disciplinary issues that resulted, which leads on to the retaliation component of her claim, where it's immediately after she began requesting the accommodations. They put her on, they began removal proceedings against her. They issued a notice of proposed removal to. What was the date of the notice? I believe it was June, Your Honor, but just one moment to consult the record. When did she first request accommodation? She requested accommodations. The removals were in August, and she requested it in the summer. So it was less than two months. This was already during the period of tardiness and being AWOL, right? The tardiness, again, resulted from her disability. Two different questions. Now we're talking about the retaliation question. And government's position is that she wasn't fair, and that was a non-pretextual reason for dismissing her. Now, you may still have an accommodation claim, but merely on the question of retaliation, you have to overcome their bona fide reason, namely she wasn't present. It's not just enough to say, well, she would have been present with an accommodation. That's enough for your accommodation claim, but it's not enough for a retaliation claim. But, Your Honor, the fact that they recommended that she seek accommodations after she returned from FMLA leave, and when she didn't seek those accommodations, they began, they didn't want to afford her all the accommodations she requested. And then, you know, finding that she was, you know, too much trouble for them, began to remove her from her employment. This speaks highly of a retaliatory agenda. You know, they don't want to accommodate this individual, and now when she's requesting these accommodations, they want to. So they're both basically the same question then, right? They're interconnected, but. If you lose the accommodation question, then you lose the retaliation question? Not necessarily, Your Honor. So if there's no basis for the accommodation argument, then you have what left on retaliation? The fact that she sought those accommodations. So whether or not those accommodations were warranted is not necessarily. But if it turns out that the accommodation argument fails and all we're left with, with her being absent 50% of the time, that seems like a non-protextual argument for reason for letting somebody go. Not when her attendance is improving and her performance reviews are meeting all expectations. That again goes to the accommodation question, it seems like. Let me ask you, what about the judge cites Dr. Barbato's memorandum? Which one is Dr. Barbato? Dr. Barbato is the district court below. Who is Dr. Barbato? Dr. Barbato is the examiner that they evaluated in terms of. It's a government doctor? Yes. Yeah. And then from her deposition, he cites she would likely not be able to work either at home or at the office when she was suffering from a migraine. Your Honor, this, again, is an issue of fact. Because the core requirements of her position, you know, she's not a physician. I mean, respondent cites two cases where these are like critical care nurses. This is not her position. The core requirements of her position could be done at home. If you choose not to give credence to her testimony for that, that's, you know, fine. But you have any evidence? This is her own deposition. She says she wouldn't be able to do it either at work or at home or at the office. That's from her own deposition. On that day, if she's suffering a disabling migraine, she could not. But that does not mean that she cannot perform the overall functions of her position, had she been given the opportunity to make up that time at a different interval on her own schedule, temporarily while she adjusted to her medication. It just seems as to that point you have to have some evidence, other than her just saying so, that the job did not require in-person presence for some hours of day to get it done. What evidence did you have that in-person presence for some hours each day is not required? Your Honor, her testimony is sufficient. And, again, What testimony is sufficient on that? Her testimony where she says that the core functions of her position did not require Is that one sentence? Because that's all I saw was that one sentence. I mean, this is – there's no documentary evidence that cited by Appellees to show that she was required to work. Their citation is to their interrogatory Well, I'm asking you because you had a burden to come forward at summary judgment with something more than one sentence, conclusory sentence in a deposition. Did you have evidence that other people were allowed to work weekends or evenings or go without being in the office or that she could have telephoned it in? Your Honor, it is our belief that now, after this motion has been briefed, that they have changed their policies and a number of employees are able to telecommute. But at the summary judgment stage, did you come forward with any of that? Not at that point, but after the briefing of the motion. But the summary judgment decision relied entirely on Solomon. The essence of the decision was that her accommodation request was unreasonable as a matter of law. The crux of the decision was based upon this decision was overturned. So whether or not her accommodation But the district court – again, that's the point that I fastened on at the beginning. The district court first said what you said and then said, even if Ms. Doak's physical presence at work was not required, she still was not able to telework effectively because her disability incapacitated her, regardless of where she was. And thus, she could not perform the essential function of her job, even with an accommodation. That's a separate argument, right? That's the appellee's argument. No, I'm reading from the district court. That's the argument that they gave credence to presented by the appellee. My client believes that had she been given an accommodation, maybe to make up the time. If she has a disabling day where she's unable to perform the functions of her work, she's disabled for that specific day, she can then make up the time when she's feeling better. That's the essence of an accommodation. It's not that she's completely disabled and unable to perform the functions at all, just when she's suffering a severe migraine. And again, this is temporary until the effects of her medications have subsided. So your argument is that even you agree that if she's got a bad migraine she can't do any work that day and she can't come in, or if she's at home she can't work, but your argument is that she could make up that day on a weekend. If they engage into an interactive process to afford her the accommodation, she could perform the essential functions of her position. Whether or not she can adhere to a rigid schedule, you know, that is precisely the issue. She could not. She needed this accommodation. Had she been given this accommodation, she could perform it, maybe not to the specific schedules that respond. But this is a temporary measure. While the effects of her medication, she was undergoing treatment, and once that had subsided she could return to resume her normal duties. Is the record saying how frequent her migraines were? Your Honor, I don't believe that there is a specific frequency that this has to do. It's just that when it would occur it would be very disabling. But, again, the issue was attendance that was residing because she could not come in at 9 a.m. precisely. So if she came in 9.30 a.m., you know, her supervisor would be timing her, saying that you're 9.02, you're late. And there was no, you know, even this is the government. You know, every employer has the larger the entity, the more flexibility they should have in affording these accommodations. And, again, if they're contending that her position required her presence at work, this is a contrary to her testimony, and this is precisely why this case should be remanded to the district court below. Because, again, there's no documentary evidence cited by them besides the testimony of her supervisor, but I don't see anything specific in her job duties. Yes, there were trainings that occurred, but she maintains that this was she hadn't been required to travel in over a year. And, again, this is a temporary measure for a couple of months until the effects of her medication subside. Further questions? Thank you. We'll hear from the government. May it please the Court, my name is John Chuang. I represent the United States Coast Guard, a component of the Homeland Security. Before I begin, I want to address a question that Chief Judge Gardner brought up, whether Ms. Doak could have performed the essential functions of a job, even with the accommodations as the district court observed. The answer is no. Dr. Bobano, as Your Honor mentioned, was Ms. Doak's own doctor, who wrote in a July 2010 memorandum in which she said, Dr. Bobano said, when Ms. Doak experiences an onset of the migraine, she would be incapacitated. But her counsel's response to that is that she doesn't have that migraine all the time and it's only for that impliedly short period of time that she's unable to work. What is the answer to that? I'm not sure what all that time means, but we do have two pieces of evidence that show that her migraine was pretty much very daily, if not every two or three days. For example, the first example is the dozens of days listed in the notice of proposed to remove her. The site number is 198 to 200. In that notice to propose to remove her, her supervisor listed two pages of days when she missed work because of migraines. Do we know these are all migraines? Well, the other, I do not, in that document it does not say so, Your Honor, but the overall context of the facts in this case, it was because of her migraines that she has been calling in sick. The second piece of evidence is at JA 648-272. In that document, her supervisor documented- I'm sorry, what page? 468-272. In that document, her supervisor documented every single day when she called in sick because of migraine issue. And in that document, it listed from July of 2009 through September 28, 2010. And so- I'm sorry, is that in this? That's the appendix, Your Honor. I don't have a 468. Is that the supplemental appendix? Yes, Your Honor. The sealed? I've got the supplemental appendix. Mine starts on 473. There's another part that I think began with page 473. Right, but you just said page 468. Did I mishear you? 468, Your Honor. Do you have a 468? No. I don't think any of us-unless you mean-I know there's a separate sealed file, which I assume you don't want to talk about here in court. We filed three appendices. Yes, yes, yes. It's the- Is it the sealed one? Yes, it's the sealed supplement, Your Honor. I apologize, Your Honor. I did not-I thought we unsealed it, but I apologize. Okay, because I didn't know that you would want to talk about that information. The only thing that I would say- Just to be clear, I think it's perfectly appropriate for you to refer us to those pages. The sealing refers to what was sealed in the district court, not necessarily what's sealed by us. So if you want to point us to the pages, you can do that. As I was saying, Your Honor, in page 648 through 74- 468. 468 through 472, the listing of the days when Ms. Doak missed work or when she was tardy for work. Although-so that is-those two pieces of paper are very illustrative of the frequency of her migraine. More importantly, as Dr. Barbano pointed out, the onset of migraine is unpredictable. And whenever the onset of migraine would come on, Ms. Doak then would take a board of medication and that would incapacitate her during the times when she needed to recover. So- I'm sorry. Go ahead and finish your sentence. So because of that, Chief Judge Garland, even with the accommodation, she would not have been able to perform the essential function of her job. I just wanted to back up to a jurisdictional issue in the case. How do you reconcile Spinelli and Potch? Well, Your Honor, in light of the recent Supreme Court decision that just came down, I believe, a couple weeks ago, the FDCA issue where-in which the Supreme Court- The Kwai-Fon Wong case. That's correct, Your Honor. The government is willing to acknowledge error here and does not think anymore that this is jurisdictional, correct? That's correct, Your Honor. Thank you.  That's correct, Your Honor. And you would read Spinelli as only requiring that there be some decision or submission to the agency, but that-do you read Spinelli as no-as actually not meaning jurisdiction, as it was one of those old uses of jurisdiction versus the rigorous ones now, or do you read it as simply requiring some kind of submission to the agency? Well, in Spinelli, the employee or the complainant, in that case, failed to completely initiate any administrative proceedings. And when it got to federal courts- There was no administrative decision at all there. Exactly. Obviously- Does the government believe that is-I know we've got Spinelli. I'm just asking the government's position. Is the government's position that Spinelli is correct, that that is jurisdictional? Yes, Your Honor. For purposes of-for failure completely to raise an administrative claim and then raise that issue in federal court for the first time, if the court were to allow that, then it would defeat the purposes of the administrative scheme that- Well, it's really-the real question here is the Supreme Court's opinion, which causes you to admit error, says that Congress has to say it's jurisdictional, right? In the Spinelli case, we're at least talking about a statute. Right. In the case we have before here, we're not talking about anything other than an EEOC rule, right? That's correct, Your Honor. So it's absolutely clear that an EEOC rule by itself can't create a jurisdictional bar because the Supreme Court said it has to be by Congress. That's correct, Your Honor. Your Honor, just to move-just to address the question that Your Honor asked of counsel about the nature of the job. Before you do that, just one more jurisdictional question that's still sitting here, which is your argument about a failure to cooperate. That's correct, Your Honor. Or maybe not a-I'm sorry, not jurisdictional, but it's a tolling question. So assuming it's not jurisdictional, we should admit it, and therefore it's a question of possible equitable tolling. Your argument is she can't equitably toll because she didn't cooperate with the agency, correct? That's correct, Your Honor. However, the agency did not dismiss the case for failure to cooperate.  That's correct, Your Honor. So isn't the implication of our decision-I'm trying to remember which one now-Boden and the previous one, that where the agency actually decides on the merits, exhaustion is sufficient. Do you agree with that? We're talking about this case. In this case, because whether or not she cooperated, the agency dismissed the case on the merits. That's correct, Your Honor. And therefore the exhaustion is satisfied. Do you agree with that? Yes, Your Honor. Yes, in a sense that the decision by the trial court where the judge basically said, well, even assuming that she was timely to file her claims, there was a different basis for dismissing. Now we're talking about what the district court did. You made an argument here and there that even if it wasn't jurisdictional, the failure to do this within the 45 days, even if it wasn't jurisdictional, she could not get equitable tolling, she did not satisfy exhaustion because she didn't cooperate. That's correct. We have cases that suggest that where the agency goes ahead and decides on the merits anyway, exhaustion is satisfied. Is this a case where exhaustion requirement is satisfied? Your Honor, the cases that the court referred to perhaps deal with Title VII cases. So we would ask to the regulation is the same regulation. That's very true, Your Honor. The same regulation. One word is race, one word is disability. They're both in the same exact regulation. That's correct. There wouldn't be any race. Koch was the rehab act. That's correct, Your Honor. And so the opposition is that the fact that she did not cooperate with the agency, it deprived the agency of the opportunity to resolve whatever claims that she may have. But the agency did resolve them, and it resolved it against her on the merits. Based on whatever it had in front of the agency without her input, and that's correct. So when you say that's correct, then do you agree that she is sufficiently exhausted so that we may go on to discuss the question, which you would like to discuss about whether or not she is able to perform her duties? Yes, Your Honor. Okay. And then can I ask you what evidence, they say there's no documentary evidence. Can you just give me a quick summary of the evidence in the record demonstrating that the job required physically, in person, being in the office at least those core hours of each day? Is there an official job description somewhere? Can you answer their argument that there really wasn't any evidence on that? There are three pieces of evidence I can point the court to. The first one is the performance plan on page 110 through 118, and specifically on page 118 where the performance plans basically said as a part of a job, it is critical that she had daily meetings with her team project managers and other team members in the project. The second piece of evidence is this. Back in May 2010, Ms. Doak wrote a letter to her supervisor, and the record number is 460. I'm just going to go back. You said page 118 is where it said she has to be able to meet in the office every day? I'm sorry, Your Honor. 115, I apologize. 115. Okay. All right. Now let's see. Now does that have, when it says daily meetings, do those, you know, it's a modern era now, do those have to be in-person meetings or could she have phoned in from home, sort of a telecommuting point? Because of the nature of her job, her physical presence was required because of the team meeting, but the team meeting is not just a bunch of people sitting around a table talking, but there is evidence in the record to show that whenever this meeting, spontaneous meeting would occur, the attendees required to view the same documents. That's what I'm trying to find. Can you help me out here? The evidence about that physical in-person office requirement as opposed to being available in some capacity to talk to people each day. That would be defending responses to the interrogatory on our page 418 through 38, particularly responses number three and five. It would describe the need for Ms. Doak to be in-person in order to view the documents and also in order to participate in the meeting. And particularly, if I can point the court to page 430 on top of the page, where the agency describes how some of these meetings require the parties to view the same documents and the same information in order for the meetings to be effective. And therefore, her physical presence would be required. So going back to my evidence, that's the first piece of evidence. The second piece of evidence is this. As a form of accommodation, her supervisor proposed to move her away from her work area. On May 21, 2010, page number 460, she wrote a memo back to her supervisor and said, I did not want to move. And I quote, it is taking me away from team and team interaction would be largely reduced. So that is Ms. Doak's own words. That memo alone suggests that she recognized the interactive nature of her work. Jan, I understand that my red light is on. May I have a few minutes just to complete my answer and to talk about the third piece of evidence? Yes. So that's the memo. And in her deposition, page 505 through 508, she talked about how she has a matrix position where she would support staff members who work on the project and what have you. So given that, Your Honor, given the nature of her job, given the fact that her own doctor says she could not work even at home or in the office whenever there was an onset of the migraine, the telework or any accommodation to the hospital would be unreasonable. Our cases have held a requirement that the employer engage in an interactive process in determining whether an accommodation is possible. Opposing counsel said there was no interactive process here, that it was just a no. What is the government's response to that? We respectfully disagree because in the context of this case, the agency provided her with seven different accommodations and one to agree upon. The agency provided her with fluorescent lights, anti-glare screen for her computer, permission to wear sunglasses in the office, noise-canceling headphones, provided her with a dark area in order for her to go whenever she had a migraine, proposed to move her to different areas to accommodate her migraine, and the agency, in fact, met with Ms. Doak and her union representative and agreed to a 9 o'clock start time. So that is a later time than what her normal schedule would be. Her normal schedule would be at 8.15. But the parties met and through that interactive process agreed to a 9 o'clock start time. And the core hours that everyone had to be there started at 10.30 to 11.30 and then there were some in the afternoon? Yes, Your Honor, at 1.30 to 2.30. So what evidence is there that a 10.30 start time then wouldn't have been workable for this position? Well, a couple of reasons, really. One, because of the meetings that her team members would have, and some of those meetings are spontaneous. That's interrogatory number three. I got the evidence that you cited, but I assume the point of the 10.30 to 11.30 and the 1.30 to 2.30 was a recognition that there was a lot of flexibility in time and those were the hours when everyone was expected to be in the office. And so outside of those hours, there's a risk that any given person might not be there for a spontaneous meeting. Well, that's correct, Your Honor. I mean, people might not attend 10.30 start time work. She'd be there for any required spontaneity. Well, the problem with a later start time is this. Her supervisor explained this in the deposition, is given the hours that her other colleagues work, having a later start time shortens the number of hours that she wouldn't act with her colleagues, even though she may meet the 10.30 start time or what have you. So that's one issue. But the second issue is this. According to her doctor, this onset of migraine is so unexpected, so unpredictable. Even with a 10.30 start time, there's no guarantee that Ms. Doak would show up at 10.30. And the two lists of dates that I pointed out to the court illustrate that, how often she would miss work or be tardy for work. And as the district court correctly pointed out, even with the accommodation, her attendance was all over the place. Are there questions from the court? Thank you. Thank you. Thank you. Does Ms. Hassan have any time left? I know you'd like five minutes. The problem is you've used it already. But nonetheless, we'll give you another minute. Thank you. Your Honor, again, the bulk of what my colleague is citing is interrogatory responses. Again, these are testimonial, and her testimony contradicts this, saying that the core requirements of her position could be provided. And again, this is not a long-term accommodation. This is just a temporary accommodation, which they refuse to provide. The 9 a.m. start time that they request, this is not what she agreed to. There was no interactive process to even see that if this temporarily could be put into place while the effects of her medication subsided. There was no interactive process here. All right. We'll take the matter under submission. We'll take a brief break while counsel changes chairs.
judges: Garland, Millett, Wilkins